# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>for the use and benefit of<br>CENTRAL SOUTHERN CONSTRUCTION<br>CORP., | )<br>)<br>)<br>) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:21-CV-024 |
| | ) | |
| GULF BUILDING,<br>HERNANDEZ CONSULTING A JOINT<br>VENTURE, LLC,<br>WESTERN SURETY CO.,<br>and BERKLEY INSURANCE CO., | )<br>)<br>)<br>)<br>) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is a motion to dismiss or transfer filed by Defendants Gulf Building, Hernandez Consulting A Joint Venture LLC, Western Surety Company, and Berkley Insurance Company. Dkt. No. 14. For the reasons below, the motion to transfer is **GRANTED**. The Court therefore does not make any ruling on the motion to dismiss but defers consideration of those issues to the transferee court.

## BACKGROUND

This is a contract case under the Miller Act. See 40 U.S.C. §§ 3131, et seq. The Miller Act requires companies that

provide materials or labor for government projects ("prime contractors") to obtain a third party's guarantee that, if the prime contractor cannot meet its obligations under the contract, the third party will assume responsibility for the failed obligations (a "surety bond"). See generally id. That bond must guarantee (1) performance of the prime contractor's duties and (2) payment of people *they* contract with to perform the contract ("subcontractors"). Id. § 3131. If the prime contractor fails to pay a subcontractor, the Miller Act allows them to sue in the name of the United States. Id. § 3133(b).

Plaintiff Central Southern Construction Corp. ("CSC") sued Defendants, prime contractors[1] on a construction project at King's Bay Naval Base, alleging that they underpaid CSC after wrongfully accusing CSC of defaulting on promised road repair and paving. Dkt. No. 1 ¶¶ 12, 23-68.

Defendants responded by filing this motion. Dkt. No. 14. Their primary request is for this Court to dismiss the lawsuit, arguing that (1) CSC may not sue until it has completed the dispute resolution procedures required by the contract, id. at 11-14; and

---

[1] The docket reflects that one of the defendants is a surety, another an insurance company, and the third a "joint venture" of some kind. See generally 2:21-cv-024. The parties give little explanatory context about their roles and relationships other than CSC's occasional references to "prime contractors," so this order will do the same.

(2) three of CSC's claims (counts II, III, and IV) do not state a claim for relief, id. at 14-20. Their alternative request is for this Court to transfer this case to the United States District Court for the Southern District of Florida under a forum selection clause in the parties' contract. Id. at 4-11.

Because the parties agreed at the motion hearing that the Court should address the transfer issue first, the Court deals with only that question here. The disagreement on that score is how best to understand the forum selection clause. Compare dkt. nos. 14, 23, and 26, with dkt. nos. 18, 30. In particular, the parties disagree about whether the forum selection clause dictates the venue for *all* disputes under the subcontract, or merely those "to challenge [a] final arbitration decision." Dkt. No. 1-3 at 18. The clause reads, in its entirety:

> Dispute Resolution. This Subcontract shall be governed, construed and interpreted in accordance with the laws of the [State of Florida] without regard to its conflict of law principles, except as to any provisions governed by the laws and regulations of the United States, as to which provisions the applicable laws and regulations of the United States shall govern. Each party hereby expressly and irrevocably consents that *any suit, action, or proceeding to challenge the final arbitration decision* shall be brought in the appropriate state or federal court within the [State of Florida, Broward County].

Id. (brackets in original) (emphasis added). Defendants contend that the modifier, "to challenge the final arbitration decision,"

applies to the term "proceeding." <u>See</u> Dkt. No. 14, 23. CSC reads that same language as applying to all three terms in the list: "suit, action, or proceeding[.]" <u>See</u> Dkt. No. 18. Thus, if Defendants are correct, then the contract says this action should have been brought in the Southern District of Florida. But if CSC has the better of the argument, then the contract specifies venue only for arbitration-related disputes, making this Court an appropriate venue for non-arbitration related dispute.

This Court held a hearing on the motion and invited the parties to submit supplemental briefing on the issue. Dkt. No. 28; <u>see also</u> dkt. nos. 26 (Defendants' supplemental brief), dkt. no. 27-1 (Plaintiff's supplemental brief), and dkt. no. 30 (same).

**LEGAL STANDARD**

The Miller Act provides that lawsuits "must be brought . . . in the United States District Court for any district in which the contract was to be performed and executed." 40 U.S.C. § 3133 (b)(3)(B). But it is well-settled that parties may agree to alter that venue via a forum-selection clause in their subcontracts. <u>See</u> <u>In re Fireman's Fund Ins. Cos.</u>, 588 F.2d 93, 95 (5th Cir.1979);[2]

---

[2] The Eleventh Circuit recognizes as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1,1981. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

see also Artistic Stone Crafters, Inc. v. Safeco Ins. Co. of Am., No. CV 108-153, 2010 WL 317472, at *7 (S.D. Ga. Jan. 25, 2010).

The mechanism for enforcing a forum selection clause is 28 U.S.C. § 1404(a), which provides that "a district court may transfer any civil action to any other district or division . . . to which all parties have consented." See Atlantic Marine Constr. Co. v. U.S. Dist. Court, 134 S. Ct. 568, 579 (2013). Since, by definition, a forum selection clause demonstrates that all parties *have* consented to a particular district, § 1404(a) requires enforcement of a valid forum selection clause in all but the most exceptional cases. Id. at 574 (citations and quotations omitted).

To that end, federal law governs disputes about the enforceability of a forum selection clause. Stewart Org., Inc. v. Ricoh Corp., 478 U.S. 22, 28-32 (1988). And under federal common law, "[f]orum selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." Krenkel v. Kerzner Int'l Hotels Ltd., 579 F.3d 1279, 1281 (11th Cir. 2009) (quotations omitted).

CSC does not dispute that the forum selection clause is valid and enforceable, dkt. No. 18 at 2, so, as they correctly state, "[t]he issue before the Court turns on interpretation—not enforceability—of the forum selection clause." Dkt. No. 18 at 2.

**DISCUSSION**

Defendants argue that the Court should transfer this case to Florida, contending that the modifying phrase ("a final arbitration decision") is best understood as applying only to the last term in the list ("proceedings"), invoking what is called the "rule of the last antecedent." Dkt. Nos. 23, 26. CSC disagrees, insisting that the case should remain here. They argue the modifying phrase applies to all three terms in the list ("suits, actions, or proceedings"), relying on the "series-qualifier" rule. Dkt. Nos. 18, 30. This is a close question, but the better answer is that this case must be transferred to the Southern District of Florida.[3]

### A. The Series-Qualifier Canon and the Rule of the Last Antecedent

"When," in a contract or statute, "there is a straightforward, parallel construction that involves all nouns or verbs in a

---

[3] Neither party takes a position on whether the interpretation (as opposed to the enforceability) of a forum selection clause is governed by state or federal law—and, indeed, that appears to be an open question. Wade Park Land Holdings, LLC v. Kalikow, No. 3:20-cv-176, 2021 WL 728185, at *11-14 (N.D. Ga. Feb. 24, 2021) (noting that while courts in this circuit typically apply federal common law to this question, the Eleventh Circuit has not decided the question in a published decision, and the Supreme Court has not decided the question at all). So while the contract principally invokes Florida law on the one hand, dkt. no. 1-3 at 18, and courts in this circuit generally address such questions under federal law, on the other, nothing turns on the difference. Both Florida and federal law appear to conceptualize and apply the canons in much the same way.

series," a modifier following the last item in the list "normally applies to the entire series." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012); cf. Porto Rico Ry. Light & Power Co. v. Mor, 253 U.S. 345, 348 (1920); Beach Towing Svcs., Inc. v. Sunset Land Assocs., LLC, 278 So. 3d 857 (Fla. 2019). So, for example, it is well-accepted that when the Fourth Amendment prohibits "unreasonable searches and seizures," that prohibition applies equally to the entire list of terms that goes before it: "persons, houses, papers, and effects." See id. (discussing U.S. Const. Amend. IV). So too, a reader intuitively applies the modifier "of the United States" to each term in the series "the laws, the treaties, and the constitution of the United States." See Lockhart, 577 U.S. 367 n.2 (Kagan, J., dissenting). This interpretive tool is generally known as the "series-qualifier" canon. See generally id.

But while courts sometimes say that "the series-qualifier canon generally reflects the most natural reading of a sentence . . . . it is very easy to think of sentences that clearly go against [it]." Facebook Inc. v. Duguid, 141 S. Ct. 1163, 1174 (2021) (Alito, J., Concurring) (quotation marks omitted). For example, if parents warn their teenage son: "'You will be punished if you throw a party or engage in any other activity that damages the house'" and the son "nevertheless throws a party and is caught,

he should hardly be able to avoid punishment by arguing that the house was not damaged." Barnhart v. Thomas, 540 U.S. 20, 27-28 (2003). Examples like that illustrate the series-qualifier's foil: the last-antecedent rule.

The last antecedent "rule"—better described as a principle or convention—holds that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." Lockhart v. United States, 577 U.S. 347, 351 (2016); cf. Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1007 (Fla. 2010) (similar), and City of St. Petersburg v. Nasworthy, 751 So. 2d 772, 774 (Fla. 1st DCA 2000) (collecting cases applying the canon); see also Scalia & Garner, supra at 144. Reading a sentence this way "reflects the basic intuition that when a modifier appears at the end of a list, it is easier to apply that modifier only to the item directly before it." Lockhart, 577 U.S. at 351.

But at the end of the day, canons like these are "another aid to discovery of intent or meaning," not "inflexibly and uniformly binding" rules. Kasischke v. State of Florida, 991 So. 2d 803, 812 (Fla. 2008) (citing 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47.33 (7th Ed. 2007)). "The important point is that interpretive canons attempt to identify the way in which 'a reasonable reader, fully competent in the language, would have understood the text at the time it was

issued.'" Facebook, 141 S. Ct. at 1173, 1175 (Alito, J., concurring). So on the one hand, "as with any canon of [textual] interpretation, the rule of the last antecedent 'is not an absolute and can assuredly be overcome by other indicia of meaning.'" Lockhart, 577 U.S. at 352 (quoting Barnhart, 54 U.S. at 26); cf. Penzer, 29 So. 3d at 1007. And, on the other, the series-qualifier canon "[p]erhaps more than most of the other canons . . . is highly sensitive to context. Often the sense of the matter prevails." Scalia & Garner, supra at 150; cf. Beach Towing Svcs., 278 So. 3d at 861 (the series-qualifier canon applies to a straightforward, parallel construction "in the absence of some other indication").

Simply put: context is king. At bottom, "[w]hether a modifier is 'applicable as much to the first as to the last' words in a list, whether a set of items form a 'single, integrated list,' and whether the application of the rule would require acceptance of an 'unlikely premise' are [all] fundamentally contextual questions." Lockhart, 577 U.S. at 355-56. As Justice Alito put it in his Facebook concurrence: whether a modifier applies to an entire list or just the nearest antecedent sometimes "has little to do with syntax[,] and everything to do with our common understanding" of what words likely mean in a given context. Facebook, 141 S. Ct. at 1174; see also id. ("[w]e can see [the result change] if we retain the same syntax but replace [one of the list items] . . . with any

number of other [words] that describe something" the modifier is unlikely to modify).

**B. Text, grammar, punctuation, context, and the rule against surplusage all indicate that this case must go to Florida.**

"Here," ultimately, "the rule of the last antecedent is well supported by context[,] and [the] alternative is not." Lockhart, 577 U.S. at 361. Five considerations demonstrate that.

**1.** First, the text of the forum selection clause is not naturally read to describe three items with a common modifier. See Porto Rico, 253 U.S. at 348 (the series-qualifier canon is the most "natural construction of the language" when "several words are followed by a clause which is applicable *as much to the first and other words as to the last*") (emphasis added). Recall that the forum selection clause provides that "any suit, action, or proceeding to challenge the final arbitration decision shall be brought in the appropriate state or federal court within the [State of Florida, Broward County]." Dkt. No. 1-3 at 18 (brackets in original). Start with the obvious: the phrase "to challenge the final arbitration decision" clearly modifies the nearest term "proceeding." Then turn to the earlier terms: "suit" and "action." The ordinary meaning of those terms include many more judicial proceedings than merely those which challenge a "final arbitration decision." See generally "Suit"; "Action," Black's Law Dictionary

(11th Ed. 2019). So while a reasonable reader certainly *could* understand "suit[s], action[s], or proceeding[s] to challenge [a] final arbitration decision" as meaning "suits to challenge [a] final arbitration decision"; "actions to challenge [a] final arbitration decision"; and "proceedings to challenge [a] final arbitration decision"—those are hardly such common phrases that this would be the *most* natural way to read the clause.

That sets this forum selection clause apart from a phrase like "the laws, the treaties, and the Constitution of the United States." See Dkt. No. 30 at 4 (discussing Justice Kagan's dissent in Lockhart, 577 U.S. at 363). A reader, particularly an American reader, is more likely to understand the latter example as a unified list. For one thing, it is a familiar phrase in legal circles, typically meaning exactly what Justice Kagan suggests: all of them are "of the United States." For another, if terms like "the laws" and "the treaties" do not mean those "of the United States" in that example, the reader may well puzzle over which "laws" or "treaties" the writer means. But since "suit" and "action" bear an obvious meaning in a forum selection clause even *without* the modifier "to challenge the final arbitration decision," there is no similar problem here.

Thus, it is perfectly natural, perhaps more natural, to understand those terms according to their ordinary meaning and to

understand "proceeding" by reference to the modifier that follows it: "to challenge the final arbitration decision."

**2.** Second, conventional grammar favors the last antecedent canon. The rule of the last antecedent is so named for a grammatical reason: modifiers generally appear beside the nouns or verbs they modify. Scalia & Garner, <u>supra</u> at 144 (citing Robert W. Burchfield, Fowler's Modern English Usage (3d Ed. 1996)); cf. Barnhart v. Thomas, 540 U.S. 20, 26 (2003) ("construing [text] in accord with [the rule of the last antecedent] is 'quite sensible as a matter of grammar'" (quoting Nobleman v. Am. Savings Bank, 508 U.S. 324, 330 (1993)) and Penzer, 29 So. 3d at 1007 (describing the last-antecedent canon as "a grammar-based canon of statutory construction")); see also Lockhart, 577 U.S. at 355 (explaining that "in none of [its series-qualifier cases] did the Court describe, much less apply, a countervailing grammatical mandate"). So ordinary grammar would suggest that placing the modifier ("to challenge the final arbitration decision") next to the last term in the list ("proceedings") means that it applies to that term—not the ones further away.

Of course, that is just an indicator—not a dispositive rule—but it is certainly relevant. After all, "rules" of grammar are just "an attempt to describe the English language as it is actually used." B. Garner, The Chicago Guide to Grammar, Usage, and

Punctuation 1 (2016). And this is a close case: in a game of inches, centimeters matter.

**3.** Third, the forum selection clause's use of punctuation suggests that this list provides three *distinct* items—not a list with a common modifier. Careful drafters use the oxford comma to make clear that a list contains three *distinct* items. William Strunk Jr. & E.B. White, The Elements of Style 2 (4th Ed. 2000) ("In a series of *three or more terms* with a single conjunction, use a comma after each term except the last."); cf. The Chicago Manual of Style § 6:19 (17th Ed. 2017), available at https://www.chicagomanualofstyle.org/book/ed17/part2/ch06/psec01 9.html (same). Since that is so, it is natural to understand the modifier here ("to challenge the final arbitration decision") as a *part* of the third item—not a descriptor for all three. See, e.g., State ex Rel. Owens v. Pearson, 156 So. 2d 4, 6 (Fla. 1963) (generally, "following an enumeration in a series, a qualifying phrase will be read as limited to the last of the series when it follows that item without a comma or other indication that it relates as well to those items preceding"); 48A Fla. Jur. 2d Statutes § 130 (recognizing that under the doctrine of the last antecedent "a qualifying phrase in a statute is read as limited to the last item in a series when the phrase follows that item without a comma"); see also Chicago Manual of Style, supra (suggesting

that "[i]f [a] sentence continues beyond [a list of three or more items]," drafters should "add a comma . . . if one is required by the syntax of the surrounding sentence," to clarify, for example, that the modifying clause "available at most large grocery stores" applies to each of the three preceding terms "apples, plums, and grapes").

A drafter aiming to overcome that reading would be well-advised to add a comma after the last item—since authorities agree that makes clear the modifier applies to all three. See Facebook, 141 S. Ct. at 1170 (As several leading treatises explain "'a qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only the immediately preceding one.'" (citing W. Eskridge, Interpreting Law: A Primer on How To Read Statutes and the Constitution 67-68 (2016); Singer & Singer, supra; Scalia & Garner, supra at 161-62)).

Just so: the Supreme Court held in Lockhart that the modifying phrase "involving a minor or ward" applied only to the nearest term, "abusive sexual conduct," not the first two items in the list, "aggravated sexual abuse" and "sexual abuse." 577 U.S. at 351-52; see also id. at 349, 357 (listing other similar examples). And the same conclusion makes sense here.

Thus, applying the last-antecedent rule in this case "heeds the commands of punctuation," id. (quoting United States Nat. Bank. Of Ore. v. Independent Ins. Agents of Am., Inc., 508 U.S. 439, 454 (1993)), further suggesting that it is the better fit here.

**4.** Fourth, context powerfully pulls toward the last-antecedent rule. Lockhart, 577 U.S. at 355-56 (whether a modifier is equally applicable to each item in a list is "fundamentally [a] contextual question[ ]"); cf. Facebook, 141 S. Ct. at 1174 (Alito, J., concurring) and Kasischke, 991 So. 2d at 812.

The choice of law provision, housed in the same section and under the same heading, supplies the rule of decision for *all* disputes under the contract.[4] Absent some strong indication to the contrary, therefore, it would be reasonable to assume that the forum selection clause also applies to *all* disputes about the contract. But applying the series-qualifier canon does the opposite. If the modifier ("to challenge the final arbitration decision") applies to each term in the list ("suit, action, or

---

[4] The heading of the provision, "Dispute Resolution," dkt. no. 1-3 at 18, would also support this same inference. After all, a reader digesting the document start-to-finish could be forgiven for expecting, when they arrive at the "dispute resolution" section, that they are about to learn where and how all disputes under the contract will be resolved. Nonetheless, the parties also agreed that the headings "are for convenience only and shall have no effect in any way on the meaning, content, or interpretation" of the subcontract, id. at 25, so that context clue plays no part in the decision here.

proceeding"), then the only thing the forum selection clause
achieves is telling the parties where to go to litigate issues on
this one topic. It would say nothing at all about where to litigate
quite literally *any* other contractual dispute, leaving the parties
with a puzzling mismatch between *how* to resolve disputes (under
Florida law, no matter what) and *where* to resolve them (in Florida,
but only if the dispute is about an arbitration decision). If the
parties here intended that sort of asymmetry, the contract does
not signal it. If the idea was to have a *universal* choice of law
provision and only a *limited* choice of forum, then placing them
under the same heading—without indicating where the other suits
should go, or even acknowledging the apparent gap—was an especially
puzzling bit of drafting.

   True, the Miller Act contains a default venue provision that
likely answers the question as a practical matter—but the dispute
resolution provision does not even reference it. So it is hardly
clear that the forum selection clause simply assumes away the mine-
run of cases but directs where just one type of dispute would go.

   Again: it is certainly *possible* to understand the contract as
CSC does despite these context clues, but it is hardly the best
reading. See Lockhart, 577 U.S. at 352 (finding that the
interpretation "urged by the rule of the last antecedent is not
overcome by other indicia of meaning. To the contrary, [the text's]

context fortifies the meaning that principle commands" considering the text's "internal logic"). Far more likely is that the surrounding context indicates what text, grammar, and punctuation all favor: the forum selection clause speaks generally on *where* to bring disputes and *whose laws* to use in resolving them—Florida, both times.

**5.** Finally, the presumption against redundant or superfluous language confirms that the last-antecedent principle is more appropriate. When possible, courts "must read [a] contract to give meaning to each and every word it contains," avoiding "treating [any] word as redundant or mere surplusage 'if any meaning, reasonable and consistent with other parts, can be given to it.'" Equity Lifestyle Props., Inc. v. Fla. Mowing & Aquascape Serv., Inc., 556 F.3d 1232, 1242 (11th Cir. 2009) (applying Florida law) (quoting Roberts v. Sarros, 920 So. 2d 193, 196 (Fla. Dist. Ct. App. 2006)); see also Scalia & Garner, supra at 174 ("[i]f possible, every word and every provision is to be given effect . . . . None should be needlessly given an interpretation that causes it to duplicate another provision or have no consequence").

To see the superfluity problem with applying the series-qualifier canon here, start with the last word before the modifier: "proceeding." According to Black's Law Dictionary, the four most common meanings of that term are:

> 1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment.
>
> 2. Any procedural means for seeking redress from a tribunal or agency.
>
> 3. An act or step that is part of a larger action.
>
> 4. The business conducted by a court or other official body; a hearing.

"Proceeding," Black's Law Dictionary, _supra_. The term "proceeding" alone, therefore, would likely be sufficient to say that essentially any legal means of seeking redress regarding "the final arbitration decision" must be brought in the Southern District of Florida. Naturally, that would include "suit[s]" and "action[s]." So if _all three_ refer to a way to challenge "the final arbitration decision," then the entire list ("suit, action, or proceeding . . .") is hopelessly redundant. The first two words would add nothing at all.

Conversely, if the modifier ("to challenge the final arbitration decision") clarifies only the last antecedent (the word "proceeding"), then each term in the list can carry at least _some_ meaning. Taking each term in turn: the word "suit" primarily refers to "[a]ny proceeding by a party or parties against another in a court of law." Black's Law Dictionary, _supra_ (emphasis added).

"Action," of course, has a very similar primary meaning: "A civil or criminal judicial proceeding." Id. "But lawyers usually speak of proceedings in courts of law as 'actions,' and of those in courts of equity as 'suits.'" See id. (quoting Edwin E. Bryant, The Law of Pleading Under the Codes of Civil Procedure 3 (2d ed. 1899)); see also id. (noting that "'action' in the sense of judicial proceeding" can also refer to things like "recoupment, counterclaim, [and] set-off" (citing UCC § 1-201(b)(1))). So read, the forum selection clause would clarify that any "dispute" under the contract must be "res[olved]" in the Southern District of Florida—differentiating between three related, but theoretically distinct, ways of doing so: (1) redress in law; (2) redress in equity; and (3) redress in any way that a party might attack the final arbitration decision. Cf. Lockhart, 577 U.S. at 356 (finding that context counseled applying the rule of the last antecedent instead of the series-qualifier principle where "applying the limiting phrase to all three items would risk running headlong into the rule against superfluity by transforming a list of separate predicates into a set of synonyms describing the same predicate," but "[a]pplying the limiting phrase" only to the nearest antecedent "preserve[d] some distinction between the categories").

CSC, for its part, contends that this reading has redundancy problems of its own. "If 'suit' and 'action' were actually intended to apply to any possible type of legal action," they submit, "then it is redundant to include the words 'challenge[s] [to] the final arbitration decision.'" Dkt. No. 18 at 6 (alterations in original). There is some truth to that. "The terms 'action' and 'suit'" generally capture most any procedure in a court of law, and are themselves "nearly[,] if not quite[,] synonymous." Black's Law Dictionary, supra (definition of "Suit"). But then—as discussed above—the term "proceeding" is *broader* than either "suit" or "action." See id. (definition of "Proceeding"). So by adding the word "proceeding," the contract captures *more* procedures than "suit" and "action" could secure alone. And any colloquial overlap is a small issue compared to the much-larger problem with the alternative. After all, "[a]lthough [these terms] are all in frequent use as synonyms for a court proceeding, their etymological development has lent them shades of meaning that they still faintly bear." See id. (definition of "Action"). It is a bedrock principle of textual interpretation that constructions which give effect to each term and provision are preferred to those which do not. Scalia & Garner, supra at 174. Some conceptual overlap is far preferable to rendering two words completely meaningless.

In sum: text, grammar, punctuation, context, and the surplusage canon all suggest that the phrase "to challenge the final arbitration decision" modifies only "proceeding"—not "suit[s]" or "action[s]" as well.

### C. CSC's arguments for applying the series-qualifier canon lack merit.

CSC offers a number of reasons that the series-qualifier canon is the appropriate lens through which to view this forum selection clause. None of them persuasively show theirs is the better answer.

First, CSC points out that arbitration is referenced by "several" provisions of the Subcontract, dkt. no. 18 at 4, and argues that, since there are many ways of challenging an arbitration decision, the forum selection clause "clearly" was "intended to encompass any of the various mechanisms" for challenging an arbitration decision, id. at 6. But that's hardly clear. That line of reasoning explains only why the contract would be sure to indicate where to challenge the final arbitration decision. It does nothing to answer why the forum selection clause would specify where challenges to the final arbitration decision should go, but not *any other* dispute that could possibly arise. If, as CSC elsewhere suggests, this is because the Miller Act venue is otherwise available, see id. at 7-8, then it is not unreasonable to expect the forum selection clause would reference that fact—or

at least indicate consciousness of the gap in some other way. Moreover, reading the forum selection clause the other way *also* covers where arbitration-related disputes should be challenged (still South Florida) and *still* captures the many ways such a challenge could be brought (by using a term like "proceeding" to sweep more broadly than "suit" or "action"). So here too, it is reasonable to understand the forum selection clause as CSC does— but the point is not so plain that it overcomes the many reasons to think that the modifier touches only the last antecedent.

Next, CSC suggests that the language of the forum selection clause is not "broad" (perhaps meaning "clear") enough to waive their venue rights under the Miller Act. Dkt. No. 18 at 7-8. The problem with that is binding precedent makes clear parties can choose an alternative venue by a forum selection clause, see In re Fireman's Fund, 588 F.2d at 95, and CSC does not cite any authority for the proposition that the parties must specifically reference the Miller Act to do so. The cases they *do* cite deal only with the necessary clarity in a mandatory forum selection clause. Dkt. No. 18 at 7-8. Yet CSC does not appear to argue that the forum selection clause in this case is merely permissive—after all, the clause here provides that disputes "shall" be brought in the Southern District of Florida. Dkt. No. 1-3 at 18. The only question is

whether that refers to all disputes or just those to challenge a final arbitration decision.

CSC also urges that, whatever the Court would conclude in a vacuum, it must construe this contract against Defendants as the drafter and the party who benefits from the forum selection clause. Dkt. No. 18 at 8-10; dkt. no. 30 at 6. But as CSC itself acknowledges, the contract says exactly the opposite. Dkt. No. 1-3 at 26 ("this subcontract shall not be construed more stringently against either party . . . regardless of which Party was primarily responsible for its preparation and drafting"). And CSC does not cite any authority for the proposition that this provision is invalid or unenforceable. See Dkt. No. 18 at 10.

It is also worth considering, CSC submits, that prosecuting this suit in South Florida would be significantly less convenient for the parties and witnesses. Dkt. No. 18 at 9 (relying on the declaration of Dominic Bucci, dkt. no. 18-1); see also dkt. no. 30 at 6. On that point, however, the Supreme Court instructs that "a court evaluating a defendant's . . . motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." Atlantic Marine, 571 U.S. at 64. CSC does not contend that the forum selection clause here is invalid— again, to the contrary, they agreed in their opening brief to this Court "[t]he issue . . . turns on interpretation—not

enforceability—of the forum selection clause." Dkt. No. 18 at 2 (emphasis omitted). So, as the Supreme Court explained in Atlantic Marine, when CSC agreed to the forum selection clause, it "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." 571 U.S. at 64.

Finally, CSC twice suggests that reading the forum selection clause with the last-antecedent canon "would require insertion of words into the contract which do not exist." Dkt. No. 18 at 7; Dkt. No. 30 at 4. But CSC never explains why that is—or what those words are. To the contrary, reading the forum selection clause as CSC does forgives the absence of (and thus arguably inserts) at least a few indicators that would support their view: the lack of a comma after "proceeding," the silence on where disputes unrelated to arbitration decisions should go, and the conspicuous failure to separate a supposedly specific forum selection clause from a more general choice of law provision.

CSC, in short, offers no sound reason to disregard the many indicators that the modifying clause here does not reach the whole list of legal processes.

**D.** **CSC has not shown any overriding public interest considerations that would justify refusing to enforce the forum selection clause.**

"In the typical case" seeking transfer under § 1404(a), that is, one "not involving a forum-selection clause," a district court must "give some weight to the plaintiff's choice of forum" and evaluate "both the convenience of the parties and various public interest considerations." Atlantic Marine, 571 U.S. at 62 & n.6. "The calculus changes, however, when the parties' contract contains a valid forum selection clause" because that contract "'represents the parties' agreement as to the most proper forum.'" See id. at 63 (quoting Stewart Org., 487 U.S. at 29). So outside of validity and construction, "a district court may [only] consider arguments about public-interest factors." Id. at 64. And "[a]lthough it is 'conceivable in a particular case'" that there will be some compelling reason *not* to transfer the case in the name of public interest, "such cases [are not] common." Id. (quoting Stewart Org., 487 U.S. at 30-31). CSC identifies many private interests that favor litigating the case here, see dkt. no. 18 at 9-12 and dkt. no. 30 at 6, but it identifies no broader public interest considerations—certainly not of the magnitude necessary to overcome a valid forum selection clause. The forum selection clause therefore carries "controlling weight" and

resolves the issue in favor of transfer. See Atlantic Marine, 571 U.S. at 60, 63.

**CONCLUSION**

Defendants' motion to transfer this case to the United States District Court for the Southern District of Florida, dkt. no. 14, is **GRANTED**. The Court defers ruling on Defendants' motion to dismiss and therefore does not decide whether some or all of CSC's claims are subject to dismissal. The Clerk is **DIRECTED** to **TRANSFER** this case to the United States District Court for the Southern District of Florida and **CLOSE** the Georgia action.

**SO ORDERED** this 4th day of October, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA